RICHARD L. HOLMES, Retired Appellate Judge.
Billy F. Johnson filed a multi-count complaint against St. Paul Fire and Marine Insurance Company (St. Paul) and Baptist Medical Center-Montclair (BMCM). •
Johnson alleged in his complaint that St. Paul, the workers’ compensation carrier for his employer, had failed to pay medical and surgical expenses arising from his on-the-job injury. Count One of the complaint alleged bad faith on the part of St. Paul in refusing to pay these medical expenses. Count Two of the complaint alleged intentional infliction of mental distress by outrageous conduct on the part of St. Paul.
Johnson further alleged in his complaint that BMCM, one of the medical providers which provided treatment for his on-the-job injury, had caused him to suffer damages because of its efforts to collect monies owed to it for the medical services provided to Johnson. Count Three alleged that BMCM was guilty of outrageous conduct and wrongful garnishment. Count Four alleged that BMCM was guilty of malicious prosecution.
St. Paul filed a summary judgment motion, which was granted in its favor. Thereafter, BMCM filed a summary judgment motion, which was granted in its favor.
Johnson appeals. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
Johnson contends that the trial court committed reversible error when it granted the summary judgment motions in favor of St. Paul and BMCM.
Our review of the record reveals the following pertinent facts: Johnson suffered an on-the-job injury in June 1987. This injury rendered Johnson permanently and totally disabled. St. Paul was the workers’ compensation carrier for Johnson’s employer.
In August 1992 BMCM rendered medical services to Johnson for this on-the-job injury, and the bill was submitted to St. Paul for payment. St. Paul paid only a small portion of the bill, leaving an unpaid balance. In December 1992 BMCM turned the unpaid balance over to the law firm that handled its collections for further collection activity.
Johnson settled his workers’ compensation claim, and the court approved a settlement petition and order on March 8,1993. Under the terms of this settlement petition, future medicals and vocational/rehabilitation services were left open. On May 17, 1993, the court issued an amended order to include “language to better define [Johnson’s] right to future medical benefits consistent with the Workers’ Compensation Act of Alabama.”
In October 1993 BMCM filed suit against Johnson in an attempt to collect the unpaid balance for the August 1992 bill. In November 1993 the court entered a default judgment against Johnson for $469.93, plus interest and costs.
In December 1993 BMCM issued a process of garnishment against Johnson’s checking account at AmSouth'Bank in the amount of $519.32. AmSouth notified Johnson of the garnishment. Johnson contacted his attorneys, who filed a motion to set aside the judgment and the process of garnishment. When St. Paul learned of the judgment and garnishment against Johnson, it paid the unpaid balance on the August 1992 bill. By agreement of the parties, the court set aside the judgment against Johnson and released the garnishment on January 27,1994.
Thereafter, Johnson filed the present action against St. Paul and BMCM.
First, we will consider whether the trial court committed reversible error when it granted the summary judgment motion in favor of St. Paul. In his brief on appeal, Johnson states that he does not pursue the outrageous conduct count against St. Paul. Therefore, we will not consider this an issue on appeal.
In Count One of his complaint, Johnson alleged the following, in pertinent part:
*280 “that [St. Paul], in violation of the settlement and petition, [has] refused to pay all of [Johnson’s] medical and surgical expenses resulting from his said on-the-job injury and ... that there are outstanding bills and expenses ... which [St. Paul has] not paid.
“... that [St. Paul is] not justified in refusing to pay the requested medical and surgical expenses and ... that [St. Paul has] wilfully and contumaciously refused to provide the expenses for the medical care necessarily and directly related to his on-the-job injury.
“[St. Paul’s] refusal to pay [Johnson’s] medical expenses has been done in bad faith.”
Our supreme court stated the following in Stewart v. Matthews Industries, Inc., 644 So.2d 915, 918 (Ala.1994):
“This court has held that a tort claim against a workers’ compensation carrier alleging a bad faith failure to pay an insurance claim is barred by the exclusivity provision of the Workers’ Compensation Act.”
This court is bound by the decisions of our supreme court. Ala.Code 1975, § 12-3-16; C & S Construction Co. v. Martin, 420 So.2d 788 (Ala.Civ.App.1982).
In light of the above, the trial court did not, in this instance, commit reversible error when it granted the summary judgment motion in favor of St. Paul. Consequently, this portion of the trial court’s judgment is affirmed.
Now we will consider the issue of whether the trial court committed reversible error when it granted the summary judgment motion in favor of BMCM.
As previously noted, Count Three of Johnson’s complaint alleged that BMCM was guilty of outrageous conduct and wrongful garnishment. Count Four of the complaint alleged that BMCM was guilty of malicious prosecution.
Our review of the record reveals the following: It is undisputed that BMCM was aware that the August 1992 bill was covered by workers’ compensation. Mitzi Winters, the Director of Patient Business Services for BMCM, testified in her deposition that BMCM referred the past-due account to one of its in-house collectors on December 2, 1992. On December 14, 1992, BMCM forwarded the account to the law firm that handled collections on past-due accounts for BMCM.
The law firm assigned the account to Linda Lewis, one of the legal assistants employed by the law firm. Lewis sent a December 18,1992, letter to Johnson, informing him that his account was past due. The letter advised Johnson that “[i]f this balance is part of a workmen’s compensation claim, please contact this office immediately with the name and address of your employer.”
Lewis stated the following in her affidavit: When she spoke with Johnson on January 5, 1993, he informed her that his medical bills were covered by workers’ compensation and that his former employer was no longer in business. Johnson referred her to his attorney.
Lewis further stated that she was finally able to speak with Johnson’s attorney on May 17, 1993. Johnson’s attorney requested that Lewis send him a letter making demand for payment of the unpaid balance and that he would forward the letter to St. Paul. The law firm sent the requested letter to Johnson’s attorney on May 18, 1993, and Lewis sent a follow-up letter on July 6,1993.
Lewis’s affidavit also stated that on October 12, 1993, when no further response had been received from Johnson’s attorney, BMCM filed against Johnson, seeking a judgment for the unpaid balance. The court entered a judgment against Johnson for the unpaid balance, and BMCM garnished Johnson’s bank account at AmSouth Bank.
Lewis also stated the following in her affidavit:
“On January 6, 1994, while speaking with a St. Paul representative, on an unrelated matter, I decided to inquire if [Johnson] had ever made a claim for the unpaid balance owed to [BMCM]. I was informed that [Johnson] had made no demand for payment. I then explained to the St. Paul representative that a balance was owing on *281 [Johnson’s] medical bill with [BMCM] and that [BMCM] had been forced to file suit to collect the balance. St. Paul paid the unpaid balance, excluding court costs, which were eventually written off by [BMCM].”
On appeal, Johnson contends that summary judgment was not proper on the issues of malicious prosecution and unlawful garnishment because, he says, it is undisputed that BMCM was aware that this unpaid balance was a workers’ compensation claim. Johnson further contends that, in spite of this knowledge, BMCM filed suit against him and that neither his former employer nor St. Paul were named as defendants in this complaint. BMCM obtained a judgment for the unpaid balance against Johnson, but not against either his former employer or St. Paul. BMCM garnished Johnson’s personal bank account at AmSouth Bank.
On appeal, BMCM maintains that it was not guilty of malicious prosecution because, it says, it had probable cause in instituting its suit against Johnson. BMCM argues in its brief that “there is no dispute that money was owed to [BMCM] for the services rendered by it to [Johnson]” and that “at the time suit was filed against [Johnson], there had been no ruling from the appellate courts of this state as to whether an employee was personally liable for the payment of medical bills for treatment of work-related injuries.”
We would note that this court’s opinion in Kelley v. Shelby County Health Care Authorities, 638 So.2d 898 (Ala.Civ.App.1993), determined that generally an employee is not personally liable for the payment of medical bills for the treatment of work-related injuries. BMCM maintains that because Kelley, 638 So.2d 898, was not released until December 10, 1993, it was acting with probable cause and well within its legal rights when it filed suit against Johnson on October 12, 1993.
However, we would note that, in her deposition, Winters admitted that she knew that Johnson was not liable for the unpaid balance. Winters further testified that when the account was forwarded to the law firm for collection, it was forwarded in order for the law firm to pursue the workers’ compensation carrier. We would further note that Lewis stated in her affidavit that Johnson advised her that his medical bills were covered by workers’ compensation and that Johnson’s attorney advised her that he would forward her demand for payment to St. Paul.
Additionally, we would note that this court stated the following in Kelley, 638 So.2d 898, 900:
“This precise question has not heretofore been addressed in this context by the appellate courts of this state; however, the Attorney General of Alabama has addressed this question [in an opinion dated February 26, 1992].... While opinions of the Attorney General are advisory in nature, they are, nevertheless, entitled to great weight.... The Attorney General opined that generally an employer, not the employee, is liable for the unpaid balance of charges for authorized medical treatment. We adopt that judicious analysis as our own.”
(Citations omitted.) Consequently, although the appellate courts had not addressed the precise issue when BMCM filed suit against Johnson, there was an Attorney General’s opinion which addressed the issue.
BMCM further contends that it was not guilty of malicious prosecution because, it says, it did not act with malice in pursuing its claim against Johnson. BMCM argues the following in its brief:
“In fact [BMCM] undertook extensive efforts to prevent the need of filing suit against [Johnson], waiting nearly a year to do so. These efforts, which are undisputed, included contacting [Johnson] personally, as well as making numerous attempts to resolve this matter with his attorney. These efforts were pursued for nearly a year, and when they proved futile, [BMCM] had no choice but to institute its lawsuit to recover the monies owed to it.”
However, it would appear from the record that after BMCM forwarded the unpaid account to the law firm for further collection activity, Lewis never notified St. Paul of the unpaid balance prior to the time that BMCM filed suit, obtained a judgment, and garnished Johnson’s personal bank account. The record reveals that when Lewis advised a St. Paul representative “that a balance was owing on [Johnson’s] medical bill with *282 [BMCM] and that [BMCM] had been forced to file suit to collect the balance,” St. Paul issued a check to BMCM for the unpaid balance on the same day (January 6, 1994) that it received notification of the collection attempt.
In light of the above, we find that there existed a genuine issue of a material fact as to whether BMCM was guilty of malicious prosecution of Johnson. See Craig v. Willcox, 655 So.2d 1002 (Ala.Civ.App.1994).
BMCM further maintains that it did not act wrongfully when it garnished Johnson’s personal bank account because, it says, the garnishment was issued to satisfy the valid judgment that it had obtained against Johnson for the unpaid balance. BMCM further argues that it issued the garnishment for the sole purpose of securing payment of the judgment and that there is no evidence that it intended to harass Johnson when it issued the garnishment.
We find that the question of whether BMCM is guilty of wrongful garnishment turns on whether BMCM is guilty of malicious prosecution. If BMCM was aware that it had no probable cause to file suit against Johnson, and if it acted with malice in pursuing its claim against Johnson, then BMCM would have known that it did not have a valid judgment against Johnson.
In light of the above, the trial court committed reversible error when it granted the summary judgment motion in favor of BMCM. Consequently, that portion of the trial court’s judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.