On Application for Rehearing
The opinion of January 12, 2001, is withdrawn, and the following is substituted therefor:
Diann Van Dervort Millar filed an action seeking to enforce certain provisions of a workers' compensation judgment incorporating a settlement agreement between Millar and her employer, Wayne's Pest Control. Wayne's Pest Control is no longer in existence. The trial court granted Millar's motion to add Construction Claims Management (hereinafter "CCM"), the workers' compensation insurance provider for Wayne's Pest Control, as a party to the action. Millar alleged that CCM had acted in bad faith by failing to pay certain medical expenses as required pursuant to the workers' compensation judgment, and she sought an award of an attorney fee. The trial court entered a judgment ordering CCM to pay certain medical expenses, but it declined to award Millar an attorney fee. Millar filed a postjudgment motion; the trial court denied that motion. Millar appeals from that portion of the trial court's judgment denying her request for an attorney fee.
The record on appeal is limited; it contains only a portion of the evidence to which the parties refer in their briefs on appeal. The record indicates that Millar suffered an on-the-job injury in early 1991 while employed by Wayne's Pest Control. She sued Wayne's Pest Control. On January 24, 1992, the parties to Millar's workers' compensation action entered into a settlement agreement; that agreement was approved by the trial court. The settlement agreement provided that "medical is to remain open."
In April 1997, Millar and CCM mediated a dispute regarding the payment of medical expenses related to Millar's 1991 work-related injury. Millar and CCM entered into an agreement that, among other things, specified the doctors from whom Millar could seek treatment and provided that CCM would reimburse Millar for her expenses incurred in traveling to seek medical treatment for her work-related injury.
In October 1998, Millar filed a "petition to show cause," seeking to have CCM held in contempt for "willful and intentional refusal" to pay medical expenses that *Page 215 
Millar alleged were related to her on-the-job injury. In that petition, Millar also sought an award of an attorney fee pursuant to Ex parteCowgill, 587 So.2d 1002 (Ala. 1991).
The trial court conducted a hearing on Millar's motion on April 17, 2000; Millar was the only witness who testified at that hearing. The evidence indicates that Millar suffered a back injury in 1991 during the course of her employment with Wayne's Pest Control. Millar testified that she suffers from muscle spasms that cause her neck to swell by as much as three inches in diameter; that the muscle spasms and swelling in her neck cause her to suffer severe headaches; that when she suffers a severe headache, she seeks medical treatment and receives shots of "botox," or botulinum toxin, for the pain; that her doctor also gives her shots for nausea caused either by the pain or by the botox shots; and that if she suffers a severe headache outside her doctor's office hours, she seeks treatment at an emergency room.
Before testimony was taken at that hearing, CCM stipulated that it would pay all of the medical bills related to the botox shots. The trial court heard testimony regarding CCM's dispute over its liability to pay for certain other occasions when Millar had sought treatment in an emergency room or from her doctor at his office. After considering the evidence, the trial court determined that CCM was liable for paying for the disputed medical treatments.
Millar argues that the trial court erred in failing to award her an attorney fee. "It is well settled that attorney fees are recoverable only where authorized by statute; when provided in a contract; or in certain equitable proceedings when the interests of justice so require, as in the case when the opposing party has acted in bad faith." Ex parte Cowgill,587 So.2d 1002, 1003 (Ala. 1991) (citation omitted). No provision in Alabama's Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975, provides for the award of an attorney fee in an action seeking medical expenses. Cowgill v. Bowman Transp., Inc., 587 So.2d 1000
(Ala.Civ.App. 1991), cert. quashed, Ex parte Cowgill, supra.
 "[T]here is no provision in the [Workers' Compensation] Act that allows an award of attorney fees under the circumstances before us, nor is there a contract that provides for such fees. Therefore, if we were to allow such an award, we would have to do so by invoking the equitable jurisdiction of the court so as to effectuate the beneficent purpose of the Act, which should be liberally construed in favor of the employee. In the exercise of our equitable powers, we would look to the acts of the employer to determine whether the employer was justified in refusing the payment of the requested medical and surgical expenses or whether its refusal to pay was done in bad faith — i.e., whether the employer willfully and contumaciously refused to provide the expenses for the medical care necessarily and directly related to the on-the-job injury. If the actions of the employer evinced bad faith, then we would be inclined to exercise our equitable powers and, thus, utilizing our policy-making function, probably would be inclined to assess attorney fees against the employer for those bad acts."
Ex parte Cowgill, 587 So.2d at 1004 (emphasis added).
In Ex parte Cowgill, supra, the parties did not dispute the trial court's finding that in challenging the necessity of the requested medical treatment, the employer had acted in good faith. Therefore, the court held that it could not require the *Page 216 
employer to pay the worker's attorney fees. Ex parte Cowgill, supra.
Millar argues that CCM's refusal to pay for her botox shots was willful and contumacious, and, therefore, that she was entitled to an attorney fee. CCM paid for Millar's botox treatment until the spring of 1998. In April 1998, CCM stopped paying for Millar's botox shots. Nothing in the record indicates why CCM stopped paying for the botox shots. The record contains the testimony of Dr. Paul R. Atchison, Millar's doctor, who stated that the botox shots were necessary to relieve Millar's pain.
CCM did not resume paying for the botox treatments until this action had proceeded to the hearing. At the beginning of the April 17, 2000, hearing on this matter, CCM stipulated that it was liable for the cost of Millar's botox-shot treatment. At that hearing, Millar presented evidence regarding the dispute over the payment of her expenses for certain emergency-room or doctor's office visits. However, Millar was the only witness at the hearing. CCM did not offer any witnesses, and Millar did not call any witnesses to testify about CCM's failure to pay for the botox shots. Thus, the record is devoid of any evidence regarding CCM's conduct with regard to its refusal to pay for her botox-shot treatments or its reasons for that refusal. The burden was on Millar to present some evidence indicating that CCM's failure or refusal to pay for her botox-shot treatments was willful or contumacious. Although this court does not condone CCM's conduct, Millar did not present any evidence regarding CCM's conduct related to its failure to pay for her botox-shot treatments.
This court has held that a trial court may, in its discretion, award an attorney fee in a civil-contempt proceeding arising out of a workers' compensation action. Ex parte Cowgill, supra; Argo Constr. Co. v. Rich,603 So.2d 1078 (Ala.Civ.App. 1992). The trial court declined to find CCM in contempt. In reviewing a trial court's determination on the question whether a party was in contempt, an appellate court applies an abuse-of-discretion standard. Cavender v. State Mut. Ins. Co.,748 So.2d 863 (Ala. 1999). Given the lack of evidence contained in the record on appeal, we cannot say the trial court abused its discretion in denying Millar an attorney fee for that portion of her claim related to the botox shots. That denial is affirmed.
We also affirm that portion of the trial court's judgment finding no bad faith in regard to CCM's failure to pay those medical expenses for which CCM, at the hearing, actually disputed its liability. CCM questioned Millar about the purpose of several visits to her doctor's office and to various emergency rooms. For example, Millar alleged that CCM was liable for treatment for an injury to her foot. At the hearing, Millar testified that she felt the foot injury was related to her on-the-job injury because, she said, she injured her foot when her back pain caused her to fall. The trial court determined that CCM was liable for payment for that treatment and several other medical expenses. However, the evidence in the record supports the trial court's conclusion that CCM's questioning its liability for those visits was justified and that its denial of those benefits did not constitute a bad-faith refusal to pay for those medical expenses.
Millar argues for the first time on her application for rehearing that the burden of establishing whether the employer acted in bad faith in refusing to pay medical expenses should be placed on the employer, just as in a retaliatory-discharge case the burden is placed on the employer *Page 217 
to prove a nonretaliatory discharge, after the employee has made a prima facie showing of an improper termination. See Twilley v. Daubert CoatedProds., Inc., 536 So.2d 1364 (Ala. 1988). However, this court may not consider arguments not raised before the trial court, Abbott v. Hurst,643 So.2d 589 (Ala. 1994); Andrews v. Merritt Oil Co., 612 So.2d 409
(Ala. 1992), and it may not consider arguments raised for the first time on application for rehearing. Schulte v. Smith, 708 So.2d 138, 141, n. 2 (Ala. 1997); Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251 (Ala. 1985); Ex parte Riley, 464 So.2d 92 (Ala. 1985).
The appellant's request for an attorney fee is denied.
OPINION OF JANUARY 12, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
All the judges concur.